Good morning. My name is Anne Wallstrom. I'm the attorney with the Federal Defenders of Eastern Washington and Idaho, and I represent Mr. Torres in this matter. Mr. Torres made three arguments in his opening brief, and I'd like to discuss two of those arguments today. The first being that Mr. Torres was unlawfully deported from the United States and that the district court erred in failing to dismiss the indictment, which charged Mr. Torres with illegal reentry. A person charged with illegal reentry may collaterally attack the underlying deportation if the person can prove that his due process rights were violated, as well as that the violations resulted in prejudice. Here in this case, it's quite unusual. Mr. Torres was deported accidentally by the INS while his appeal was pending. The INS readily conceded that he was deported in error and sought to make arrangements for Mr. Torres to be returned to the United States. In the district court's order, and what the government is asking this court to find, is that once Mr. Torres was deported in error, that he somehow waived his right to seek further judicial review in this case. Mr. Torres did not waive his appeal once he was deported in error to Mexico. He was deported a few weeks after he filed his notice of appeal. He was deported in early December of 1997. He contacted his attorney as soon as he was made contact by the INS. His attorney contacted the INS and said he's going to be deported in error, his appeal is still pending, and the INS sought to make arrangements for him to be returned. Counsel, isn't the real issue in this case whether or not Mr. Torres had an opportunity to challenge his deportation? That is one of the central issues in this case, Your Honor. And so if he was still in contact with his attorney, wouldn't he have the opportunity to challenge his deportation? If he had somehow been able to manage and maintain contact with his attorney, perhaps he would have been returned to the United States. He did contact his attorney after he was in Mexico. He remained in contact with his attorney once he was in Mexico. Yes, he did. His attorney sometime thereafter tried to contact him and could not. That's correct. He never again called his attorney, contacted his attorney. That's correct. Mr. Torres — At the time that occurred, the case was on appeal to the BIA. That's correct, Your Honor. And Mr. Torres had remained in contact with his attorney from the time of his deportation until December 21, 1997. On December 23, a representative from the INS contacted his attorney to say, now we've made arrangements for a flight on December 24. At that time, Mr. Torres was no longer in contact with his attorney and never received information about the flight. Did he not advise his attorney of a mailing address or another telephone number or anything? There's nothing about that on the record, Your Honor. Well, okay. There's nothing showing that there was any forwarding information given to his attorney. However, because Mr. Torres was able to make some contact with his attorney, we should not presume that Mr. Torres waived his appeal once he was in Mexico. Now, just to make sure I understand what happened, even after contact between Mr. Torres and his attorney ceased, his attorney pursued his appeal to the BIA. That's correct, Your Honor. He filed an opening brief in January. And that appeal was unsuccessful. The attorney then did not seek to bring a petition for a review of the BIA to this Court. That's correct, Your Honor. And so while the attorney was willing to go forward with the appeal to the BIA even after he'd lost contact with his client, he was unwilling to go further and take the petitioner review to this Court in the absence of contact with his client. For whatever reason, he did not appeal it further to this Court. Is there any evidence in the record that between the time of the BIA appeal and the time for petitioner review that there was contact between the petitioner and his attorney? There's no evidence that there was any contact after December 21st, 1997. What the government is asking this Court to find is that Mr. Torres, a 20-year-old individual with a 10th-grade education, waived his right to appeal once he was deported. When a court is determining whether someone has waived a right, we must make every presumption against a waiver. Do we have to find a waiver in order to uphold a conviction? Do we have to find a waiver? In order to uphold Mr. Torres' conviction, you don't necessarily have to find a waiver. Mr. Torres must show that there were procedural defects that also caused prejudice. Exactly. So how was he prejudiced? Mr. Torres had several arguments for him to continue raising with this Court, and some in particular are especially important because Mr. Torres raised an equal protection argument, which this Court is aware cannot be addressed by the Board of Immigration on the constitutionality of the rules that it must enforce. Mr. Torres, stepping back to the facts of this case, Mr. Torres was convicted of unlawful possession of a firearm in July of 1996. He was served with the order to show cause shortly thereafter, before his appeal of that conviction was final. Therefore, in June of 1997, his appeal was still continuing. The Washington Court of Appeals had not yet dismissed his appeal. At that point, in June of 1997, when he appeared before the immigration judge, the service could not meet its burden that Mr. Torres was deportable because there was no final conviction on record. And at that point, the immigration judge had a duty and a responsibility under the statute to find that the service had not met its burden by clear and convincing evidence. That is one argument that Mr. Torres could have continued on with to this  day. So you're saying that he was prejudiced despite the fact that much of the prejudice was caused, prejudice of any was caused by the fact that he did not maintain contact with his attorney. The prejudice began at the hands of the United States government when they deported this man to Mexico, thousands of miles away. For us to say that Mr. Torres is at fault for losing contact when the United States government, with all its funds and resources, is the one that initiated this and started this. If Mr. Torres had been allowed to remain incarcerated during this appeal, all of this would have been avoided and he could have continued his, the judicial review, which is so critical in this case. He also filed a motion, a second motion, to re-paper the proceedings in September of 1997. The immigration judge ruled that she did not have the authority to do such a thing. In fact, she does. She's a delegate of the attorney general, and the attorney general did have the right to allow for re-papering. And this was tied in with his equal protection argument. Mr. Torres is saying, I wanted to be treated like other legal permanent residents and fall under the new rules. Kennedy, it's a flip from what we usually get. He wants to be treated under the 10-year rule instead of the 7-year rule because somehow he gets the exception under what, for the most part, is a harsher rule. That's correct. This is a rare case where, under the new rule, Mr. Torres would have plausible relief. He would, he had been a legal permanent resident since 1984, so he had met the 10-year requirement. He had continuously resided here for seven years, and his attorney was going to make the argument that his unlawful possession of a firearm conviction was not an aggravated felony. There's no case law stating that for immigration purposes, an unlawful possession of a firearm conviction is an aggravated felony. Counsel, in your answer to Judge Rawlinson's questions, you said there was no waiver here. Yes, Your Honor. The Supreme Court's trying to teach us the difference between the term waiver and the term forfeiture. The waiver is one where you expressly say, I give up my right to something. A forfeiture is a failure to exercise the right. Wasn't there a forfeiture here of his right to appeal to this Court by his failure to keep in contact with the lawyer he knew was pursuing the appeal to the BIA? Your Honor, when looking at the difference between a waiver and forfeiture in this context, the Court must find that he waived his appeal. Forfeiture alone is not going to be sufficient for Mr. Torres to have given up his right to appeal. To give up his right to appeal, he must waive it, and it must be knowing and intelligent. And this Court has found that when a person is at an immigration hearing and makes a mass silent waiver to appeal before an immigration judge, that that alone is not sufficient to be knowing and intelligent. So while Mr. Torres may have forfeited this right, it was not a knowing and intelligent waiver, which the Court must find. Why must we find that? In order to find that he gave up his right to appeal. What I'm saying is that it must be a waiver rather than a forfeiture. Why must it be a waiver rather than a forfeiture under these circumstances? The case on the circuit is clear, that when a person gives up the right to appeal, it must be knowing and intelligent. And the government must demonstrate that. And in this case, under these circumstances, Mr. Torres did not make a knowing and intelligent waiver. So why can't we find that he didn't give it up? He just decided not to take it. He forfeited the appeal. Every time someone doesn't take an appeal, it doesn't mean that they waived it. It's just that they decided not to follow through with it. That's different, as Judge Alicorn was making the point, that's different than asking if someone waived it specifically. It's just they didn't take it. I agree with that, Your Honor. I see I'm about to run out of time. Go ahead and answer the question, and then we'll give you a minute to rebuttal. Thank you. I lost my train of thought. In order for ---- It doesn't matter if there are alternative holdings we can make. One is whether or not he expressly waived the appeal. The other is whether he just decided not to take an appeal, which is a forfeiture. Right. I don't believe in this case forfeiture can apply to Mr. Torres because this is an individual who had filed a notice to appeal just a few weeks before. Mr. Torres made the effort in order to appeal. And now for him to take back and to give up his right to appeal, this Court must find that there was a waiver. And I believe that's fair. There are a number of people who appeal to the BIA and don't do a petition for review. What evidence is there in the record that he intended to pursue a petition before this Court? I think the evidence is that one of his primary claims was an equal protection argument, which could not have been addressed. Of course, that's after the fact. That was raised in his motion to terminate in September of 1997 before he filed his notice to appeal. So that issue had to have been addressed by this Court. It could not have been addressed by the Board of Immigration Appeals. Okay. You're a little over your time. We'll give you a minute in response. Thank you. Mr. Court, my name is James Haggerty. I represent the United States in this matter. I think that the Court has hit on the crucial point. In this case, it's unfortunate, but the government admits that Mr. Torres was removed from the country by mistake, in error, by immigration prior to the completion. And the key was that the order occurred in September of 1997 ordering him deported. He filed a notice of appeal to that in, I believe, November, November 9th of 1997, and then he is removed in early December, approximately a month later. And it's in error. Well, if the facts that came out were that he called his lawyer and said, I'm being deported, and the next day he calls again and says, I've been deported. I'm in Mexico. And that occurs around the early part of December. Subsequent to that, you have a period of approximately 12 or 13 days, which the evidence was that he had stayed in repeated contact with his lawyer about getting back into the United States. Now, we don't know, nor was any evidence submitted as to the content of that. So we would speculate, or we could assume, but because his lawyer calls INS and says, you made a mistake, we need to get my client back. You should not have deported him. The assumption, and I think it's a reasonable one, is that the attorney spoke to his client and said, that's a mistake, I'm going to work on getting you back, or I'm going to work on resolving it. And so that's why we have this repeated contact until December 21st, which is the last day which is reported that counsel speaks to his client. Now, December 21st of 1997 is, I think the court is, later on the question was, where was the defendant? Well, four days before Christmas, and he's in Mexico and his family is in the United States. I don't think it's a long stretch, but I think the trial court said is, we know where he is. He went back to the United States after that. However, on the 23rd. Is there any evidence on the record? No, there's not. No. So he smuggled himself in when he had a free ticket from the INS to do the same thing? The problem was, is on the 20th, December 21st is when he last speaks to his attorney. December 23rd, INS has worked out all of the arrangements, has a ticket, and has available, and calls the lawyer and says, tell us what port of entry your client will be coming to. We will arrange to have a pass at that. What they do is they write his name, and when he goes, they check it and find that he's supposed to be, excuse me, to allow it in the country. On the 24th of December, his lawyer calls him at the same number that he has been reaching him at for the last approximately two weeks, and he's not there. They don't know where he's at. He's gone. And subsequent to that, there's no conversation between the lawyer and the client at all, although we had the number. He had the lawyer's number and had, in fact, called his lawyer both from the United States and from Mexico when this error was occurring. At no time does he ever contact his lawyer. But to, I guess, ask again Judge Alicorn's question to make sure I understand the answer, there's nothing in the record that tells us where he is during this post-December 21st period. There is not. Until, of course, he's discovered. Again, yes, in 1999. Is there any evidence when he's discovered in 1999 as to when he came back? I don't know, Your Honor. I'm sorry, I don't have that. He came back sometime between December 1997. That much we know. That much we do know. And, of course, it's not a requirement of the statute that you prove when he came back. All you need to show is that he was found. But, okay. Right. So the real issue, and the appellate has made a lot of argument about this. The judge was wrong. He could have appealed. The fact is that she didn't terminate the proceedings and his request to be under the new act, and then did he withdraw and all that. But really that, it goes to this last point about a waiver, a forfeiture, a relinquishment, an abandonment, whatever you wish to call it, is did he take affirmative action to basically lose or to give up those rights? He has control over the situation. He has his lawyer's number and he's had contact. That is not disputed. The lawyer has made contact with him in Mexico and been able to discuss with him various matters, and that's not in dispute. Can I ask this? If he had pursued his appeal not only to the BIA, which he did, or his lawyer did without even talking to him, but also filed a petition for review in this Court, were his arguments, I won't say winners, but were they plausible? I don't think so. But that's my own personal opinion. No, but I'm asking for, I mean, because one of the arguments that we might get to if we get far enough down the chain is did he have plausible arguments in order to show prejudice for the fact that he was unable or somehow did not bring that appeal? In your view, the equal protection argument is not plausible? No. Because? His argument is basically that, as I put it out there, is that the immigration judge should have terminated the proceedings because his appeal was pending, and that wasn't. No, that's not the argument. The argument is, is it a violation of equal protection for someone in his position to have been treated under the 7-year rule instead of the 10-year rule? Not that the I.J. had the power to do it, because the I.J. might not have had the power to do it, but it was a violation of equal protection for the statute to treat him differently depending on the two statutes. It would be the same argument as made is do we go and say, because you're so close, then you have the right to decide under what law should apply to your deportation rather than the Immigration Service. And then let's say that mine is in February of that year rather than in May or August or September. Well, I have the same right because I'm close. I'm not as close as him, but I'm close. But the difference is not his behavior. The difference is when the INS decides to institute the proceeding. He did what he did. Correct. And the only difference is when the proceedings are instituted. Correct. And I think the INS proceeded correctly in this case, and they did everything that they could or were able to do. And I think just because it's on his wish list is that he wants to be treated under the new act doesn't justify it, nor does it establish a plausible argument. We have a couple of equal protection cases I'm sure you're aware of about whether somebody had been admitted or whether there's an exclusion and so on. We would have to say that's an equal protection violation. Now, they may be odd cases. I have to concede I think they are a little bit odd. But is there a plausible argument based on those cases for equal protection here? I'll admit to the Court I'm not familiar. I couldn't identify any of those cases. I think in this case, as the government's position is, you have to find a defect in the proceedings to be talking about this. And there are defects. Are there any equal protection cases regarding the date when removal proceedings are initiated? I thought the case law was pretty clear that you don't have any right to any particular time period for removal proceedings to be initiated. What's your ---- That's my understanding. But again, I'm not ---- Immigration isn't my strong suit. They brought you in as a pinch hitter? Is this what's going on today? And there may well be some. But I think in the cases that we can argue all we want about what could have happened, what should have happened, what may have happened. But the issue here is, did he have the right? Could he have brought those arguments? And, yes, he appealed it. He had a lawyer follow up on it. And he terminated. He abandoned the contact with his lawyer. So any future arguments are foreclosed because he terminated it. He decided what he will do. This is a hard case for me because I hear very loud and clear your argument that if he had wished to pursue the petition for review from the BIA to the Ninth Circuit, it doesn't look as though there is any insuperable obstacle in his so doing. On the other hand, it's quite clear that the United States government, through its mistake, its unlawful deportation, created a situation where the sequence of events worked out in an entirely improbable way. We know that in the normal course of events, someone who is lost in front of the IJ and who has appealed to the BIA and whose interests would be served even by preserving status quo, we get frivolous petitions for review all the time. And his was not necessarily even a frivolous petition. It seems to me very likely that had the INS not deported him by mistake, had he remained in this country, the likely course of events would have been we would have got a petition for review to this court. And we might or might not have agreed with him, but we would have gotten it. So on the one hand, yes, he could have done so in the sense that, I mean, he's not locked up in some dungeon in the Amazon and unable to communicate with his attorney. At least there's nothing in the record that shows us that. On the other hand, the United States government, by its mistake, has created a situation where this is the result. But the United States, the court is correct. I mean, the United States Immigration Service created a situation which is not the general, regular course of events. However, upon realizing the mistake, and while Mr. Torres is in contact with his lawyer and his lawyer is in contact with Mr. Torres, they take steps to correct it and return him to the United States. He's out and he has the ability to do that. He's been doing that, and there's been that communication. Then all of a sudden, well, within his control, he terminates that. Then we are unable to find him. And in the brief, they said the government couldn't find him. Well, of course, he's in Mexico. We tried.  So at that point you have to correct it. Kennedy. I don't fault the government for what it did after it realized it was a mistake. You tried to make it right. I understand that. And that's the difference in this case is there was an effort to get him back. Had he stayed in touch with his lawyer, he would have been back in the United States. So thank you. Thank you very much. Would you like a minute? Thank you, Your Honor. With regard to Mr. Torres' arguments that he could have continued on appeal, they were plausible arguments, and he did have plausible relief. And we've been able to show that while we cannot demonstrate conclusively that he would receive relief, there is plausible relief. The argument he would have been making was that he was entitled to have his removal date changed so that it would be the notice of his deportation changed so that it would be on the date where the new rules would govern. Is that the argument? The argument is that when he was served with the notice to appear, his conviction in Washington State court was not final at that point. He was appealing it. And therefore, the government could not prove with clear and convincing evidence that he had a final conviction. It wasn't a final conviction. It was on appeal. The appropriate time to have served Mr. Torres with the notice to appear would have been in August of 1997 once the appeal was final. And the new rules would have been in effect. And the new rules would have been in effect. This is not a frivolous argument. That is a And that's independent of the equal protection argument. It's independent of the equal protection argument. But in a way, it is tied to the equal protection argument because Mr. Torres could argue that he's being treated differently than other similar LPRs for no rhyme or reason. Thank you, Your Honors. Thank you very much. Thank you both for your helpful argument. The United States v. Torres is now submitted for decision. The next case on the argument calendar is United States v. Wilson.
judges: Alarcon, W. Fletcher, Rawlinson